IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TROY ALSTON** | * | |
| | * | |
| Plaintiff, *pro se* | * | |
| | * | |
| v. | * | Civil No. **PJM 15-3558** |
| | * | |
| **EXPERIAN INFORMATION** | * | |
| **SOLUTIONS, INC. et al.** | * | |
| | * | |
| Defendants | * | |
| | * | |

### **MEMORANDUM OPINION**

*Pro se* plaintiff Troy Alston has brought suit against five Defendants in connection with a university class enrollment fee he says he does not owe. Against Defendants George Mason University ("GMU"), which offered the class, and Williams & Fudge, Inc. ("W&F"), an alleged debt collector, he says that W&F's attempt to collect his purported $162 "delinquent" debt to GMU violated the Maryland Consumer Debt Collection Act, § 14-202 and the Maryland Consumer Protection Act, § 13-301. Against W&F only, Alston also brings a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. Against three credit reporting agencies, Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union"), and Equifax Information Services LLC ("Equifax"), Alston alleges that their reporting that this "debt" was delinquent as well as subsequent conduct violated the Fair Credit Reporting Act ("FRCA") 15 U.S.C. § 1681 *et seq*.

Three Defendants have moved to dismiss the suit: GMU, Experian, and Trans Union. For the reasons that follow, the Court will **GRANT** GMU's Motion to Dismiss for Lack of Jurisdiction, and will **DISMISS WITH PREJUDICE** Alston's claims against it. The Court will

also **GRANT** the Motions to Dismiss of Experian and Trans Union, and **DISMISS WITHOUT PREJUDICE** all claims against them.

## I.   FACTUAL BACKGROUND

Alston states in his Amended Complaint that in the fall or winter of 2012, he enrolled in a course at George Mason University, in Fairfax, Virginia, but then withdrew from the course. Am. Compl. ¶ 6.  Because his withdrawal was purportedly "timely," GMU was supposed to forego the course enrollment fee. *Id*. ¶¶ 7, 14.

However, at some point in 2014, Defendant W&F, which Alston describes as a "debt collector that focuses its business in the recovery of education-related receivables," *id*. ¶ 3, began to contact him regarding his "delinquent" GMU debt, which W&F stated was $162.  *Id*. ¶ 8. Alston disputes that this was the amount of the class enrollment fee, which he says was $125, not $162.  *Id.* ¶ 14. When Alston contacted W&F to question its "legal authority" to collect this debt at all, the company's representative purportedly told him: "[the debt's] reporting on your credit so obviously we have some type of authority to do something."  The representative also purportedly indicated that the debt was reported by three credit reporting agencies—Defendants Trans Union, Experian, and Equifax.  *Id.* ¶ 10.

Alston states that, after unsuccessfully disputing the debt with W&F, he "submitted his dispute" to the three credit reporting agency Defendants. *Id.* ¶ 12.  He "explained that he did not owe the debt to GMU because he cancelled his enrollment in time to have the enrollment fee dropped," and that the class enrollment fee was $125, not $162.  *Id.* ¶¶ 13-14.  Equifax responded by "sending Plaintiff its reinvestigation results, which stated that the collection account was deleted from his Equifax credit file."  *Id.* ¶ 16.  While Alston notes that both Experian and Trans Union deleted the "delinquency" from his credit report, neither is alleged to

have sent him the results of their reinvestigation. *Id.* ¶ 18. As to all three credit reporting agencies, Alston alleges that the reinvestigation they conducted in response to his dispute was "nothing more than forwarding notice of Plaintiff's dispute to W&F and blindly accepting and reporting the results of the W&F investigation results." *Id*. ¶¶ 17, 19.

Further, says Alston, "upon information and belief, the Defendants provided inaccurate and/or incomplete credit reports to numerous entities, including but not limited to: 1st Financial Bank USA, credits and/or debt collectors associated with his student loans." *Id.* ¶ 20.

On this basis, Alston brings his suit. The first three counts are against W&F for attempting to collect on the disputed $162 class enrollment fee debt: (1) Count 1, Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e; (2) Count 2, Violation of the Maryland Consumer Debt Collection Act, § 14-202; and (3) Count 3, Violation of the Maryland Consumer Protection Act, § 13-301. He also brings Counts 2 and 3 against GMU, based on the theory that *respondeat superior* makes GMU liable for the actions of its agent, W&F, rather than for any specific debt collection activity by the University.

In Count 4, Violations of the Fair Credit Reporting Act ("FCRA"), Alston alleges that the three credit reporting agencies failed to employ reasonable procedures to ensure maximum accuracy in their credit reports, failed to conduct a reasonable reinvestigation to determine whether the disputed information was accurate, and failed to notify him of the results of the reinvestigation as required by 15 U.S.C. § 1681i(a).

Alston originally filed suit in the Circuit Court for Prince George's County, ECF No. 2, but Trans Union removed the case to this Court in a timely fashion, ECF No. 1, which brought the entire case to federal court. After Experian filed a Motion to Dismiss for Failure to State a Claim, ECF No. 25, Alston did not respond but instead filed an Amended Complaint. ECF No.

27. While both W&F and Equifax filed Answers to Alston's Amended Complaint, ECF Nos. 15, 30, Experian and Trans Union filed Motions to Dismiss. ECF Nos. 32, 37. Alston filed a Response to both Trans Union's and Experian's Motions to Dismiss. ECF Nos. 40, 45. Trans Union and Experian both filed replies. ECF Nos. 43, 45.

Alston filed a Motion for Order of Default as to GMU, ECF No. 36, which opposed the motion and filed its own Motion to Dismiss on the basis that it had never been properly served. ECF No. 51. GMU also cited a number of other grounds for dismissal, including lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.  Alston filed no response to GMU's motion.

## II.   STANDARD OF REVIEW

A party may move for dismissal pursuant to Federal Rule of Procedure 12(b)(1) where the court lacks subject matter jurisdiction over the claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited subject matter jurisdiction; they "possess only the jurisdiction authorized them by the United States Constitution and by federal statute." *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360, 2365, 168 L.Ed.2d 96 (2007)).  Parties can neither confer subject matter jurisdiction nor waive a jurisdictional defect.  *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004).  As the party asserting jurisdiction, the plaintiff bears the burden of proving that the district court has subject matter jurisdiction.  *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A party may also move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), where a complaint fails to state facts sufficient to "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Whether a complaint adequately states a claim for relief is normally judged under Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Twombly*, 550 U.S. at 555. A complaint must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A plaintiff proceeding *pro se* is entitled to have his complaint construed liberally, but this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). While the facts alleged in Alston's complaint must be taken as true, bare conclusory statements "are not entitled to the assumption of truth." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679)) (internal quotation marks omitted).

### III.   ANALYSIS

The Court considers each of the claims against George Mason University, Trans Union and Experian in turn:

#### A.  COUNTS 2 and 3 - GEORGE MASON UNIVERSITY (GMU)

The Court will dismiss all claims against GMU for lack of subject matter jurisdiction because it enjoys sovereign immunity. As a state-supported university, GMU is an "arm of the Commonwealth of Virginia," and as such "enjoys the same sovereign immunity as the Commonwealth of Virginia." *Adkins v. Rectors and Visitors of George Mason University*, 2015 U.S. Dist. LEXIS 128150 (E.D. Va. Sept. 23, 2015) (finding that GMU was entitled to sovereign immunity from a suit alleging a tort and claims under Section 1983). The Eleventh Amendment, which grants States sovereign immunity from lawsuits brought by private citizens, precludes

federal courts from exercising jurisdiction over claims against states, unless Congress makes its intention "unmistakably clear" to allow them. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000). Courts have found that Congress did not abrogate state sovereign immunity in passing the FCRA. *See e.g., Sorrell v. Illinois Student Assistance Comm'n,* 314 F. Supp. 2d 813, 817 (C.D. Ill. 2004)(dismissing a FCRA claim against the Illinois Student Assistance Commission for lack of jurisdiction because the defendant was a state agency); *Betts v. Commonwealth of Virginia*, 2007 WL 515406, at *3 (E.D. Va. Feb. 2, 2007)(dismissing a FCRA claim against the Virginia Employment Commission because it enjoys sovereign immunity). Accordingly, the Court lacks subject matter jurisdiction to hear claims against GMU and with **GRANT** GMU's Motion to Dismiss **WITH PREJUDICE**.[1]

## B. COUNT 4 – EXPERIAN AND TRANS UNION

In Count 4 of the Amended Complaint, Alston alleges that Equifax, Experian, and Trans Union violated the Fair Credit Reporting Act. ECF No. 27 ¶41. Experian and Trans Union have filed Motions to Dismiss. ECF Nos. 32, 37.

---

[1] Though the lack is of subject matter jurisdiction requires the Court to dismiss the claims against GMU, the Court also finds persuasive GMU's arguments as to improper service and lack of personal jurisdiction. Federal Rule of Civil Procedure 4(j) requires that a state-created governmental organization, such as GMU, be served either by "delivering a copy of the summons and of the complaint to its chief executive officer" or by service "in the manner prescribed by that state's law for serving a summons or like process." Fed. R. Civ. P. 4(j)(2). Virginia law prescribes that service on public government entities can only be made by "leaving a copy with the person in charge of the office of any officer [so] designated." Va. Code Ann. § 8.01-300(3). Neither the Federal Rules nor Virginia law authorize service by mail. Alston sent the summons and an unsigned copy of the complaint via "certified, return receipt, restricted delivery" to Angel Cabrera, GMU's President and the Chief Executive Officer. Service was therefore improper.

The Court also finds that it lacks personal jurisdiction over GMU. A Federal court looks to the rules of the state in which it sits to determine whether it has personal jurisdiction over a party. Fed. R. Civ. P. 4(K)(1)(A). While Maryland's long arm statute allows personal jurisdiction to limits of the Constitution, "a plaintiff must specifically identify the Maryland statutory provision that authorizes jurisdiction, either in his complaint or in opposition to a Rule 12(b)(2) motion." *Malebranche v. Johnson*, 2015 WL 4396745, at *2 (D. Md. July 16, 2015). Alston has failed to plead any specific facts connecting GMU with the forum. Plaintiff, a resident of Maryland, apparently enrolled in a course at a Virginia state-supported school. He has alleged only actions taken by him to reach into Virginia, not the reverse. Thus, the Court could dismiss the suit for lack of personal jurisdiction pursuant to Rule 12(b)(2).

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 (2007) (citing 84 Stat. 1128, 15 U.S.C. § 1681). As a result, the procedures established in the FCRA regarding consumer credit reporting are intended to both "meet[ ] the needs of commerce" and be "fair and equitable to the consumer." *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (citing 15 U.S.C.A. § 1681(b)).

Alston has alleged that the credit reporting agencies violated the FCRA when they (1) failed to establish reasonable procedures to ensure that information reported on Alston's credit report was accurate pursuant to 15 U.S.C. § 1681e(b) ("Reasonable Procedures Claim") and (2) failed to conduct a reasonable reinvestigation under 15 U.S.C. § 1681i(a) (1) (2), (4), (5) when Alston notified them of an inaccuracy ("Reinvestigation Claim"). He also alleges that Trans Union and Experian also failed notify him of the results of their reinvestigation, pursuant to 15 U.S.C. § 1681i(a)(6) ("Notification Claim"). These claims will be considered in turn.

### 1. REASONABLE PROCEDURES CLAIM

Alston says that the credit reporting agency Defendants "violated [their] obligations under 15 U.S.C. 1681e(b) to follow reasonable procedures to assure maximum accuracy by relying on unreliable sources of information in the preparation of [their] Credit Reports." Am. Compl. ¶ 41. He claims that including information furnished by W&F in its report necessarily means that Defendants did not have reasonable procedures because W&F "often provides inaccurate information regarding debts allegedly owed by consumers." *Id.* ¶ 42.

Trans Union counters that, under the relevant case law, it does not violate the FCRA where information received from a source it reasonably believes is reputable turns out to be inaccurate, unless the agency previously received notice that the information is false. ECF. No.

32. Trans Union points out that, as soon as Alston provided notice that he disputed the "delinquency" information, it removed the debt from his account. ECF No. 32.  Experian adds a related argument, suggesting that Alston's claim fails because he does not allege the requisite facts that would demonstrate W&F was not a reputable source on which Experian could reasonably rely. ECF No. 37.

Pursuant to Section 1681e(b), "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A consumer reporting agency violates § 1681e(b) if: "(1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001).  In bringing a claim under Section 1681e(b), the plaintiff bears the burden to demonstrate that consumer reporting agency failed to follow reasonable procedures. *Id.* at 416.

Alston's allegations do little more than repeat the language of the statute, and amount to mere conclusory allegations insufficient to survive a motion to dismiss.  He asserts that W&F "often provides inaccurate information regarding debts allegedly owed by consumers" but that Defendants "do not maintain any reasonable procedures to prevent W&F's inaccurate reporting from appearing on consumer's credit reports."  *Id.* ¶ 42.  To support this allegation, Alston includes a footnote referring to a website called "the Ripoff Report" and to the Better Business Bureau entry for W&F.  *Id.* ¶ 42 n. 1, 2.

A member of this Court recently confronted and rejected arguments nearly identical to those advocated by Alston.  In *Dawud Best v. Credit Control Services*, the plaintiff suggested that a consumer reporting agency had failed to follow reasonable procedures because a furnisher

of information had 504 complaints lodged against it with the Better Business Bureau. Case No. PWG-15-1141, 10 Memorandum Opinion (D. Md. March 23, 2016). According to the plaintiff in *Best*, those complaints should have put the credit reporting agency on notice that the information it was receiving was unreliable. *Id.* Judge Grimm rejected that argument because the plaintiff did not demonstrate how those complaints related to his specific dispute nor did the plaintiff allege facts to support the notion that the credit reporting agency "was aware or should have been aware of those disputes." *Id.* Absent such allegations, there was not enough factual content for the claim to survive a motion to dismiss.

The same rationale applies here. Without more detailed allegations as to the content of the complaints to the Better Business Bureau or on the website against W&F, and more particularly, a discussion of the nature and resolution of their claims, as well as their specific relevance to Alston's complaint, the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## 2. REINVESTIGATION CLAIM

In his reinvestigation claim, Alston alleges that Defendants violated 1681i(a) (1)-(2), (4)-(5) of the FCRA by "failing to conduct a reasonable reinvestigation to determine whether the disputed information was accurate." *Id.* ¶¶ 45-47.

Trans Union argues that it is not liable under 1681i(a) regarding dispute procedures, because it promptly removed the disputed account from Alston's credit file.[2] ECF No. 33. Experian adds that Alston has failed to plead sufficient facts to support a reinvestigation claim because he has failed to include the dates when Experian received Plaintiff's dispute and investigated the account. ECF No. 37.

---

[2] It should be noted that Trans Union submits that it has no record of ever including the GMU debt on Alston's account. ECF No. 33 n.2. However, as is appropriate when considering a Motion to Dismiss, the Court will take the facts alleged in Plaintiffs' Amended Complaint as true.

Section 1681i permits consumers to challenge the content of credit reports. Pursuant to 1681i(a), if the consumer notifies the agency that it disputes information in its file, "the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, *or* delete the item from the file . . ." 15 U.S.C. 1681(i)(a)(1)(A) (emphasis added). If the credit reporting agency conducts a reinvestigation, it must provide notice to the consumer within five business days of concluding the reinvestigation. Section 1681i(a)(5). Further, if the disputed information is found to be inaccurate, incomplete, or cannot be verified, the CRA is required to "promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation." 15 U.S.C. § 1681i(a)(5)(A)(i). "If the CRA modifies or deletes any information in the credit file, it must also notify the furnisher of that information of the change." *Petty v. Equifax Info. Servs., LLC*, 2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010) (citing 15 § 1681i(a)(5)(A)(ii)).

Plaintiff alleges that Trans Union and Experian violated § 1681i of the FCRA, despite the fact that they deleted the purported delinquencies from their accounts in response to his dispute, because they did not undertake a "reasonable reinvestigation." ECF No. 27 ¶46. Trans Union suggests that this argument is self-contradictory – Plaintiff should not be able to dispute the reinvestigation procedures when those procedures produced the exact result Alston requested, i.e., the deletion of his account. ECF No. 33. The Court agrees with Trans Union and Experian.

Alston has not pleaded sufficient facts to support his reinvestigation claim. He says "the Defendant CRAs did not read and assess Plaintiff's dispute but simply forwarded the dispute to W&F to assess the claims in the dispute and the CRSs parroted the results of W&F's investigation results." ECF No. 27 ¶46. Contrary to Alston's description, this procedure, known as Consumer Dispute Verification ("CDV") has been widely accepted as meeting the threshold

-10-

for reasonable reinvestigation, both in this Court and in others. *See e.g.*, *Jianqing Wu v. Trans Union, Civil Action No.* 2006 U.S. Dist. LEXIS 96712, at *25 (D. Md. May 2, 2006)(finding a reasonable reinvestigation where the credit reporting agency sent CDV forms to the consumer's creditors and updated the account to reflect their responses); *Dickens v. Trans Union Corp.,* 18 F. App'x 315, 319 (6th Cir. 2001). Indeed, the FCRA itself contemplates such a system. 15 U.S.C § 1681i (a)(5)(D)("Automated Reinvestigation System"). Given the widespread acceptance of CDV and Alston's failure to point to any additional deficiency in Defendants' reinvestigation process, the Court finds that the factual basis is insufficient to maintain this claim.

### 3. NOTIFICATION CLAIM

Facts supportive of Alston's notification claim are sparse. Under the FCRA, a credit reporting agency has 30 days "beginning on the date on which the agency receives the notice of the dispute from the consumer," to execute its reinvestigation and five days after it is complete to notify the consumer of its findings. 15 U.S.C. § 1681i (a) (1) (6). Alston claims only that "after an unsuccessful attempt to dispute the debt directly with W&F, [he] submitted his dispute to Experian, Equifax, and Trans Union." ECF. No. 27 ¶12. He includes no dates. However, this obvious deficiency is not fatal to his claim because Alston alleges that Trans Union and Experian altogether failed to report the results of their reinvestigation. But that still does not further his cause.

The Court is unconvinced that Alston has pled enough facts to support his claim that the lack of formal notice caused him injury sufficient to meet the standing requirements under FCRA, as articulated recently by the Supreme Court in *Spokeo, Inc. v. Robins*. 136 S. Ct. 1540 (2016). In order to meet the constitutional minimum required for standing, (1) the plaintiff must have suffered an "injury-in-fact," (2) there must be "a causal connection between the injury and

the conduct complained of and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 L.Ed.2d 351 (1992). A plaintiff must demonstrate that "an invasion of a legally protect interest" is "concrete and particularized," and "actual or imminent." *Id.* at 560.

Plaintiffs do not "automatically [satisfy] the injury-in-fact requirement whenever a statute grants a person a statutory right" and allows them to vindicate that right." *Spokeo* at 1549. A "bare procedural violation, divorced from any concrete harm" does not necessarily satisfy the injury-in-fact requirement. *Id.* Courts look to whether procedural violations "entail a degree of risk sufficient to meet the concreteness requirement." *Id.*

In his Amended Complaint, Alston writes that Defendants' actions "caused the Plaintiff to suffer damages including out-of-pocket costs, loss of time, frustration, anger and other emotional or mental stress." Am. Compl. ¶ 48. These are the barest of bare bones allegations. The Court is unable to determine whether Defendants' failure to give Alston formal notice of their reinvestigation results, which were clearly favorable to Alston, created a sufficient injury to confer standing.

## IV.     CONCLUSION

GMU's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**, and all claims against GMU are **DISMISSED WITH PREJUDICE**. ECF No. 51.

The Court will **GRANT** Experian and Trans Union's Motions to Dismiss Plaintiff's Amended Complaint, ECF. Nos. 32, 37 and **DISMISS WITHOUT PREJUDICE** all claims against them.[3]

If within 20 days, Alston so chooses, he may file a Motion for Leave to Amend his Amended Complaint, together with an accompanying memorandum of law and fact sufficient to justify the amendment. The Court directs that in any such motion, Alston shall specifically address (1) the precise date that Experian and Trans Union began reporting the alleged delinquency; the precise date that Alston complained of this alleged error to Experian and Trans Union; and the precise date(s) when Defendants stopped reporting the delinquency; (2) how and exactly when Alston received actual notice of Experian's and Trans Union's reinvestigations; (3) how not receiving formal notice of the reinvestigations within this time frame caused Alston any of the damages that he claims, indicating precisely the names of any banks or other institutions or individuals that Alston is prepared to prove denied him any benefit by reason of the fact that Alston did not receive formal notice of the results of the reinvestigations; and (4) whether Alston's damages constitute sufficient injury-in-fact to give him standing in light of the Supreme Court's ruling in *Spokeo*.[4] 136 S. Ct. 1540 (2016).

The Court takes this firm approach primarily for at least two reasons. First, FCRA suits against credit reporting agencies have proliferated in recent years, many based at best on no real or very *de minimis* injuries in fact, but which have been filed essentially for the purpose of

---

[3] Experian's Motion to Dismiss for Failure to State a Claim is **MOOT**. ECF No. 25.

[4] While at it, Alston must also set forth specific facts that would justify a finding of "willfulness" on the part of Defendants in support of his claim of punitive damages. *See Davenport v. Sallie Mae, Inc.,* 124 F. Supp. 3d 574, 584 (D. Md.), aff'd, 623 F. App'x 94 (4th Cir. 2015)

winning statutory damages or, what is more likely, in the hope of extracting settlements from defendants.

But there is more. The fact that Plaintiff's surname is "Alston" gives the Court considerable pause. An extraordinary number of FCRA cases have been filed in this Court by allegedly *pro se* "Alston" plaintiffs.[5]

Thomas Alston, a non-attorney, has not only been among the named *pro se* plaintiffs but appears as well to have been the author-in-fact of several of these *pro se* Alston-Plaintiff suits, as well as other suits, ostensibly filed by pro se plaintiffs seeking monetary compensation for trivial harms, such as the alleged failure to promptly receive a mortgage note marked "paid" when it has been paid in full. *See e.g., Alston v. Wells Fargo Bank, N.A., 2016 WL 4158369 (D. Md. Aug. 5, 2016).* The Court takes judicial notice of Thomas Alston's LinkedIn profile on the internet, in which he holds out that

> For the cost of a reasonably priced paralegal, you get the value of a high-caliber attorney. Armed with a thorough understanding of the judicial system, great legal vision, specialized research skill, competitive spirit and writing and communication skills to convey the foregoing, there is no legal task that I cannot accomplish with the utmost competency. Extensive experience in drafting complaints, supporting and opposing briefs, discovery documents and more. I have over 10 favorable court opinions from the US District Court for Maryland and Circuit Court for Prince George's County to back up my proclaimed competencies.

---

[5] For example, Thomas J. Alston has been plaintiff in approximately eighteen FCRA cases in this Court (8:11-cv-02292-RWT, 8:12-cv-00670-RWT, 8:12-cv-00721-RWT, 8:12-cv-01708-AW, 8:12-cv-01819-AW, 8:12-cv-03589-AW, 8:12-cv-03671-AW, 8:12-cv-03745-AW, 8:13-cv-01232-PWG, 8:13-cv-01226-PWG, 8:13-cv-01598-PJM, 8:13-cv-01704-RWT, 8:14-cv-03199-DKC, 8:15-cv-03099-TDC, 8:15-cv-03393-DKC, 8:16-cv-00491-GJH, 8:16-cv-00491-GJH, 8:16-cv-00608-TDC). His mother Yvonne is the plaintiff in nine cases (8:12-cv-02270-AW, 8:12-cv-02711-DKC, 8:13-cv-01012-RWT, 8:13-cv-01218-PWG, 8:13-cv-02388-DKC, 8:13-cv-02675-TDC, 8:14-cv-02987-PWG, 8:15-cv-03100-GJH, 8:16-cv-00491-GJH); his sister Candace in four cases (8:12-cv-02732-RWT, 8:12-cv-03357-AW, 8:14-cv-00656-RWT, 8:16-cv-00491-GJH); his sister Kimberly Ann in one case (8:12-cv-02533-RWT); and his brother Jonathan in four cases before this Court (8:12-cv-03294-DKC, 8:13-cv-00913-DKC, 8:13-cv-02390-DKC, 8:15-cv-03099-TDC, 8:15-cv-03393-DKC). Nearly all of the lawsuits are against credit reporting agencies or other financial institutions. The Court notes that all of these "Alston" plaintiffs have the same address of record, 10012 Cedarhollow Lane, Largo, MD 20774.

Thomas Alston, LinkedIn (Aug. 26, 2016, 6:15 PM), https://www.linkedin.com/in/doctormoney.

Given this state of affairs, the Court directs Plaintiff Troy Alston, within twenty (20) days, to submit an affidavit (under oath) setting forth the names of every individual (including, but not limited to Thomas Alston) or entity that has provided him with any advice, documents, or pleadings in connection with the present lawsuit.

A separate Order will **ISSUE**.

                                                                     /s/

                                             **PETER J. MESSITTE**
                            **UNITED STATES DISTRICT JUDGE**

**August 31, 2016**